J-S56035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAHEED CARROLL, | |
| Appellant | No. 1930 EDA 2016 |

Appeal from the Judgment of Sentence January 5, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0013189-2014

BEFORE: BOWES, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 14, 2017**

Appellant, Shaheed Carroll, appeals from the judgment of sentence imposed following his jury conviction of robbery and related crimes, notably, intimidation of a witness. He challenges certain testimony as inadmissible hearsay, and a comment of the prosecutor during final argument, which he claims constituted impermissible vouching for the credibility of the complaining witness. He also challenges the sufficiency of the evidence for the conviction of intimidation of a witness, and the weight of the evidence in general. We affirm.

We derive the facts of the case from the trial court's opinion and our independent review of the record. (**See** Trial Court Opinion, 1/23/17, at 2).

_____

[*] Retired Senior Judge assigned to the Superior Court.

This case involves two successive robberies, about a month apart, of the same victim.[1] The victim, Tyreese Sheppard, initially claimed that he was first assaulted by ten people. In the second attack he was assaulted by three people, who had all been part of the original attack.

The Commonwealth's theory of the case, reflecting Sheppard's initial accounts, was that the second robbery was in response to his report of the first robbery to the police, as punishment for "snitching," and as a warning to stop further cooperation with the police.[2] After his statement to the police on the second robbery, Mr. Sheppard substantially changed his claims. In essence, his revised explanation exonerated Appellant.

In the first robbery, shortly after midnight on August 10, 2014, Sheppard initially reported that he was assaulted by a group of about ten persons (nine males and one female, "Ebony") while he was walking his then-girlfriend home from the Frankford Transportation Center in the vicinity

---

[1] The two robbery/intimidation cases were tried together. Appellant, Darnell Woodson, and Edward Martin, the alleged perpetrators of the second robbery, were all tried together, after a motion for severance was denied. All three were convicted. This Court has previously affirmed the judgments of sentence for Martin and Woodson. **See Commonwealth v. Martin**, No. 243 EDA 2016, 2017 WL 3114935, at *1 (Pa. Super. filed April 12, 2017); **Commonwealth v. Woodson**, No. 1576 EDA 2016, 2017 WL 3142527, at *1 (Pa. Super. filed July 25, 2017).

[2] It bears noting that Sheppard, then age 27, testified he was receiving social security benefits for mental health issues, *viz.*, "[m]ild MR and bipolar." (N.T. Trial, 10/26/15, at 87).

of Bustleton and Cheltenham Avenues in Northeast Philadelphia. (*See* N.T. Trial, 10/26/15, at 86-100, 118-19). Sheppard testified that the assailants accused him of taking "something from someone." (*Id.* at 89; *see also id.* at 90). There was also a vague allusion to a "he said—she said" disagreement, which appeared to involve Ebony, identified by Sheppard as the sister of Shaheed (Appellant). (*See id.* at 103-04).[3]

In any event, they attacked him and took his cell phone, kufi,[4] ID, and two hundred dollars in cash. Sheppard and his girlfriend flagged down police on neighborhood patrol and reported the robbery within a few minutes. Sheppard could not identify all the attackers, but did name some of the assailants. (*See id.* at 100) ("I know them from the neighborhood."). In particular, he identified Appellant, Shaheed Carroll. (*See id.* at 103). Later that night Sheppard reviewed and signed a written statement to the police.

About a month later, on September 20, 2014, Sheppard was assaulted again, under similar circumstances. One of the three attackers threatened him with a knife. All beat him, kicked him, and robbed him. He called the

---

[3] We recognize that counsel for Appellant maintained that the reference was actually to the sister of another assailant in the first attack, Shadee, not Shaheed [*i.e.*, not Appellant]. (*See* N.T. Trial, 10/28/15, at 111-12). The trial court properly decided that the alleged discrepancy was for the jury as factfinder to resolve. (*See id.*). The discrepancy is not material to our resolution of the issues on appeal.

[4] A kufi is a short, brimless, rounded hat, commonly worn in West Africa, South Asia, and by others of West African heritage.

police a second time. At first he identified three people from the earlier attack (including Appellant) as the perpetrators of the second attack. Sheppard again signed a written statement to the police.

The trial court made the following related findings of fact:

> On September 19, 2014, the complainant, Tyreese Sheppard, was leaving a friend's house on the 6100 block of Frontenac St. in Philadelphia. At that location he was approached by the defendant [Appellant], along with co-defendants, Darnell Woodson and Edward Martin. The co-defendant, Darnell Woodson made a comment regarding Mr. Sheppard "snitching" about a previous robbery [on August 10, 2014] where he was the victim. The co-defendant Woodson then started to instigate a fight between the two. The other co-defendant Martin joined in the fight and both started punching and kicking Mr. Sheppard all over his body. Mr. Sheppard fell to the ground and at that point the defendant [Appellant] began kicking him. All three defendants then went through Mr. Sheppard's pockets and took from him his cell phone, charger, SEPTA[5] Transpass [weekly or monthly transportation ticket], headphones, and $5 before running off. Mr. Sheppard called 911 and was able to provide the police information so that his cell phone could be tracked.
>
> Based on the information about Mr. Sheppard's cell phone, police officers were able to track the phone to the area of 5300 Darrah Street. At that location, officers stopped the three co-defendants since they matched the description given by Mr. Sheppard. Mr. Sheppard positively identified each co-defendant as being a participant in the robbery. The items Mr. Sheppard identified as being taken from him by the co-defendants were recovered from their possession.

(Trial Ct. Op., at 2) (record citations omitted).

_____

[5] SEPTA is an acronym for the Southeastern Pennsylvania Transportation Authority.

Additionally, with specific reference to Appellant, Shaheed Carroll, we note that Sheppard told the police, "He was kicking me once I was on the ground. He said he was beating me up for snitching on them the last time they robbed me. He was the one that took the $5 from me. He went through my pockets and took it off of me." (N.T. Trial, 10/26/15, at 116).

Sometime after making the initial reports, Sheppard apparently reconsidered, and at least by the time of the preliminary hearing he was an unabashedly reluctant witness: ("First, do you want to be here today?" "No."). (N.T. Preliminary Hearing, 11/21/14, at 6).

At trial, Sheppard offered this rationale: "Me, I'm 27. So I'm from the streets. So I always look at it like if you [sic] in [c]ourt and you [sic] sitting here talking about someone, it's snitching. I've never been a snitch a day in my life, so − [.]" (N.T. Trial, 10/26/15, at 108).[6]

In his trial testimony, Sheppard recanted or radically revised much, if not most, of his earlier statements. In particular, after previously identifying Appellant as one of the assailants who kicked and beat him, (**see id.** at 115-16), at trial Sheppard claimed that Appellant was not involved in the second attack at all. He testified instead that Appellant was merely an onlooker. (**See id.** at 97) ("I say [he] spectated. Just so, like, oh, like you know, just

_____

[6] Mr. Sheppard also tried (unsuccessfully) to leave court early, claiming vaguely that he had a prior appointment required by Social Security. (**See** N.T. Trial, 10/26/15, at 159-60). The judge ordered him to stay.

normal spectating."). Sheppard added that "Shaheed [Appellant] was all the way on the other side of the street." (***Id.*** at 109).

The Commonwealth read into the record the text of Sheppard's earlier, signed, incriminatory statements to the police, identifying Appellant as an active assailant. Sheppard agreed that he had reviewed and signed the statement of August 10, 2014, Commonwealth C-8. (***See id.*** at 98). Sheppard also agreed that he had reviewed and signed the statement of September 20, 2014, Commonwealth C-9. (***See id.*** at 110-11).

Pertinent to the first issue on appeal, over the objection of Appellant's defense counsel, the Commonwealth also read the following statement by Sheppard to the police into the record:

> "When they found out that I had filed a report against
> them, I got word back that whenever they came across me, they
> were going to beat me up and rob me again."

(***Id.*** at 113, lines 18-21).

On cross-examination, Sheppard admitted his prior incarceration, having pleaded guilty to theft by unlawful taking by the use of another person's credit card information. (***See id.*** at 143-45). The defense lawyers for all three defendants also read selective portions of the prior statements, highlighting, *inter alia*, inconsistencies with his trial testimony. They all called Sheppard's credibility into question.

In her closing argument, the prosecutor stated, *inter alia*, that "[t]he law foresees that there's going to sometimes, maybe, be outside influences that may cause you to backtrack . . . . The law understands that maybe Mr. Tyreese Sheppard has to go back home." (N.T. Trial, 10/28/15, at 101-102). The trial court overruled the objection of Appellant's counsel.

The jury was undecided on all charges arising out of the August assault.[7] (**See** Trial Ct. Op., at 1 n.1). It convicted Appellant of the following charges arising out of the September assault: robbery, (threatening bodily injury),[8] conspiracy to commit robbery, (threatening bodily injury),[9] intimidation of a witness,[10] and simple assault.[11] The jury was undecided on the remaining charges.[12] The Commonwealth *nolle prossed* the remaining charges, declining to re-prosecute them.

---

[7] Specifically, the jury could not reach a verdict on robbery, (threatening serious bodily injury); robbery, (threatening bodily injury); conspiracy to commit robbery, (threatening serious bodily injury); conspiracy, (threatening bodily injury; theft by unlawful taking; receiving stolen property; simple assault; and recklessly endangering another person. (**See** N.T. Trial, 11/02/15, at 12-13).

[8] 18 Pa.C.S.A. § 3701(a)(1)(iv).

[9] 18 Pa.C.S.A. § 903.

[10] 18 Pa.C.S.A. § 4952.

[11] 18 Pa.C.S.A. § 2701.

[12] Specifically, the jury could not reach a verdict on robbery, (threatening serious bodily injury); conspiracy to commit robbery, (threatening serious
*(Footnote Continued Next Page)*

On January 5, 2016, the court sentenced Appellant to a term of incarceration of not less than six and one-half nor more than thirteen years in a state correctional institution. Appellant's post-sentence motion, including a challenge to the weight of the evidence, was denied by operation of law. This timely appeal followed.[13]

Appellant raises four questions for our review:

> 1. Did not the trial court err by allowing the introduction of inadmissible hearsay evidence through testimony of the complainant and a detective in the form of statements made by unknown third parties, that were offered solely to prove the guilt of [A]ppellant and his co-defendants?
>
> 2. Did not the trial court err by overruling [A]ppellant's objection to improper remarks made by the prosecutor during her summation, inasmuch as the prosecutor's statements violated due process by improperly expressing a personal opinion as to the credibility of the complainant's statement to detectives and misstating the law regarding prior inconsistent statements, thereby depriving [A]ppellant of his federal and state constitutional rights to due process, a fair and impartial jury, and a fair trial?
>
> 3. Was not the evidence insufficient to support the verdict of intimidation as a matter of law, where the complainant was not a witness or a victim in any criminal matter at the time of the September robbery and the only evidence as to [A]ppellant's conduct during the September robbery was that he said he was

_(Footnote Continued)_    ————————

bodily injury); theft by unlawful taking; receiving stolen property; and recklessly endangering another person.

[13] Appellant filed a timely court-ordered statement of errors on July 15, 2016. The trial court filed an opinion on January 23, 2017. *See* Pa.R.A.P. 1925.

beating up the complainant because the complainant snitched, which was not conduct intended to thwart the administration of justice?

4. Did not the trial court err by denying [A]ppellant's post-trial motion for a new trial, as the verdict was against the weight of the evidence, where the Commonwealth's complainant admitted to lying at various times throughout the proceedings and provided so many differing versions of events such that the totality of the evidence was so tenuous, vague and uncertain, that it did not support the verdict and a new trial was necessary in the interests of justice?

(Appellant's Brief, at 5-6).[14]

Appellant first argues that the trial court erroneously permitted the admission of inadmissible hearsay evidence.[15] (**See** Appellant's Brief, at 20-26). We disagree.

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not

_____

[14] Appellant's brief exceeds forty-one pages, substantially in excess of the thirty-page "safe harbor" maximum. Counsel for Appellant has failed to comply with the requirement to certify that the brief does not exceed the rule-based word limit. **See** Pa.R.A.P. 2135. We could quash this appeal on that basis alone. **See Commonwealth v. Spuck**, 86 A.3d 870, 871 (Pa. Super. 2014), *appeal denied*, 109 A.3d 679 (Pa. 2015). Nevertheless, we decline to do so for reasons of judicial economy.

[15] Appellant implies multiple claims of hearsay, but in point of fact the only claim specifically mentioned, let alone developed, is the (oft-repeated) reference to the "I got word back" statement. (Appellant's Brief, at 20, 21, 22, 23, 25).

applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c).

*Commonwealth v. Bishop*, 936 A.2d 1136, 1143 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1159 (Pa. 2008) (case citation omitted).

"We have repeatedly declared, however, that an out-of-court statement offered to explain the course of conduct of police is not hearsay. Since the challenged statement was offered merely to establish the officer's course of conduct, appellant's complaint is without merit." *Commonwealth v. Hill*, 549 A.2d 199, 203 (Pa. Super. 1988), *appeal denied*, 563 A.2d 887 (Pa. 1989) (citations omitted); *see also Commonwealth v. Carroll*, 513 A.2d 1069, 1071 (Pa. Super. 1986) (course of conduct exclusion not limited to conduct of police).

Here, the trial court expressly noted its conclusion that the statement to the police officer formed the basis of the police investigation. (*See* N.T. Trial, 10/26/15, at 113). On independent review, we agree. The statement was not offered for the truth of the matter, but to show the basis of the police linking investigation of the September attack to the August attack.

We would add that the statement also established the state of mind of the victim (who testified that he tried, unsuccessfully, to take evasive action to avoid his would-be assailants) providing an explanation for his later

change of heart about testifying against Appellant, after he was robbed and beaten a second time.

Furthermore, our Supreme Court has recently reaffirmed that evidence of other crimes, while generally not admissible solely to show criminal propensity, may be admissible in special circumstances where it is relevant for some other legitimate purpose; such as the *res gestae* exception, where the evidence became part of the history of the case and formed part of the natural development of the facts. **See Commonwealth v. Cousar**, 154 A.3d 287, 303–04 (Pa. 2017) (citing **Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988)). Thus, under the *res gestae* exception evidence can also be admissible to show motive and complete the story of the case. **See Cousar**, **supra** at 304 (citing **Lark**, **supra** at 497).

We conclude that in this case, as in **Cousar** and **Lark**, the threat of retribution would be a part of the history of the case which completes the story and forms part of the natural development of the facts, from robbery to police report, to threat of retribution, to retribution, under the *res gestae* exception.

The Commonwealth further notes that the prior statement of a recanting witness challenged as hearsay is admissible both as a prior inconsistent statement and as evidence of the declarant's state of mind. (**See** Commonwealth's Brief, at 10) (citing **Commonwealth v. Ragan**, 645 A.2d 811, 818-19 (Pa. 1994) (holding signed statement of identifying

- 11 -

witness who later recanted was admissible both as prior inconsistent statement by recanting witness, and as evidence of witness' state of mind)).

We agree. The anonymous threat of retribution was not presented for the truth of the matter, but rather to show the witness' state of mind and to explain why the witness' trial testimony conflicted with his prior statements.

Furthermore, even if the statement was hearsay, it was merely cumulative of other admissible evidence. *See Commonwealth v. Luster*, 71 A.3d 1029, 1042 (Pa. Super. 2013), *appeal denied*, 83 A.3d 414 (Pa. 2013) (murder victim's allegedly hearsay statement that appellant was going to harm her was merely cumulative of other evidence, and harmless error). Here, notably, Sheppard reported to the police that while he was being assaulted (for the second time) Appellant told him directly that he was being robbed and beaten for "snitching." (N.T. Trial, 10/26/15, at 116).

Finally, on this claim, Appellant argues that the purportedly erroneous admission of the rumor/report reference was the corroboration on which the Commonwealth "hung their [sic] hat." (Appellant's Brief, at 26). Appellant argues, in effect, that admitting the evidence "was not harmless error," because the reference was needed to obtain a guilty verdict. (*Id.*). In other words, Appellant asserts that without the erroneously admitted evidence, he would have been acquitted. He concludes "a new trial is warranted." (*Id.*). We disagree.

This claim is unsupported and speculative. Sheppard's report of a rumor did not identify Appellant or any other potential perpetrators. The single, brief reference to a rumor or report that unnamed parties intended to beat and rob Sheppard is merely cumulative of Sheppard's direct statement (albeit later recanted) that Appellant (and the other co-defendants) did beat him, kick him and rob him for snitching. (*See* N.T. Trial, 10/26/15, at 116). Even if improperly admitted−a conclusion we emphatically reject for the reasons already noted−it would have been at most harmless error.

Here, the trial court committed no error. The statement was not hearsay. It was properly admitted as a prior statement inconsistent with Sheppard's subsequent recantation, indicating his state of mind, to complete the story of the case and explain both the police course of conduct and his own. Moreover, Sheppard, the declarant, testified and was subject to cross-examination, excluding his statement from the hearsay rule. *See* Pa.R.E. 803.1(1). We discern no basis on which to disturb the discretion of the trial court. Appellant's first claim does not merit relief.

In his second claim, Appellant argues that the prosecutor improperly vouched for the credibility of Sheppard. (*See* Appellant's Brief, at 27-30). Appellant references that in closing argument the prosecutor stated that "outside influences . . . may cause [you] to backtrack[,]" *i.e.*, cause Sheppard to recant his incriminating testimony. (*Id.* at 27) (citing N.T. Trial, 10/28/15, 101-103) (internal quotation marks omitted). In an

apparent reference to Sheppard's testimony that he knew his assailants from the neighborhood, the prosecutor added, "The law understands that maybe Mr. Tyreese Sheppard has to go back home." (N.T. Trial, 10/28/15, at 102).

Appellant maintains that the prosecutor's statements improperly vouched for Sheppard by expressing a personal opinion as to the credibility of his statements to the police, entitling him to a new trial. We disagree.

It is well-settled that vouching is a form of prosecutorial misconduct, occurring when a prosecutor "places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the witness's testimony." *Commonwealth v. Reid*, 99 A.3d 427, 447 (Pa. 2014) (citing *Commonwealth v. Williams*, 896 A.2d 523, 541 (Pa. 2006)).

Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion:

> In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.
>
> Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.
>
> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense

arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. 2008) (citations omitted).

A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. **Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks.** Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made.

Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial[.] Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

While it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses, **it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt** . . . . [The] prosecutor must be free to present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable.

*Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014), *cert. denied*, 135 S. Ct. 1493, 1494 (2015) (citations and internal quotation marks omitted) (emphases added).

Here, furthermore, our independent review of the record reveals that Appellant's defense counsel did not object to "vouching" at trial. (*See* N.T.

Trial, 10/28/15, at 101-02, 112-13, 115). Rather, counsel objected that the prosecutor's closing statement erroneously invoked a purported presumption of law to the effect that victims of crime want to tell the truth about the crime committed against them. (**See, e.g.**, **id.** at 113) (defense counsel did not object to vouching; instead, he asked, "What law presumes that?").

Accordingly, Appellant's claim of vouching is waived. **See** Pa.R.A.P. 302(a). ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, it would not merit relief.

Preliminarily, we note that the challenged statement by the prosecutor does not in fact constitute vouching as defined by our controlling authority. **See Reid**, **supra** at 447; **Williams**, **supra** at 541. The prosecutor did not offer her personal opinion on the credibility of the witness. She did not refer to information outside the record. She referred to an alternate statement already on the record as the testimony more worthy of belief. "A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." **Burno**, **supra** at 974 (citation omitted). "[I]t is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt[.]" **Id.** (citation omitted).

Additionally, Appellant's intertwined companion argument, that the prosecutor misstated a supposed presumption of law, does not merit relief

- 16 -

either. On independent review, we conclude that the prosecutor's comments were made in fair response to repeated challenges by all three defense counsel to Sheppard's credibility based on his inconsistent statements. "Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks." *Id.* at 974 (citation omitted); *see also* Pa.R.E. 803.1(1); *Commonwealth v. Brady*, 507 A.2d 66, 69 (Pa. 1986); *Commonwealth v. Lively*, 610 A.2d 7, 9-10 (Pa. 1992).

We find here that the prosecutor's statements were an attempt, in fair response even if arguably inartful, to invoke the undisputed principle that the Commonwealth was entitled to introduce the prior inconsistent signed statements of a recanting witness, known as the *Brady*/*Lively* rule.[16] (*See* N.T. Trial, 10/28/15, at 115) (prosecutor citing *Brady*/*Lively* rule).

Additionally, the trial court properly instructed the jury that it was to apply **only** the law on which the court instructed it, and that the arguments of counsel were not to be considered as part of the evidence. (*See* N.T. Trial, 10/28/15, at 120, 126). "It is settled law that, absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions . . . , and Appellant does not point to any evidence to the contrary."

_____

[16] *See Commonwealth v. Chmiel*, 738 A.2d 406, 419 (Pa. 1999), *cert. denied*, 528 U.S. 1131 (2000) (noting that under *Brady*/*Lively*, prior inconsistent statements of non-party witness may be used as substantive evidence where declarant is witness at trial and available for cross-examination).

*Commonwealth v. Laird*, 988 A.2d 618, 629 (Pa. 2010), *cert. denied*, 562 U.S. 1069 (2010) (citation omitted). Appellant's claim that the jury was misled and confused on the controlling law by the prosecutor's remarks ignores well-settled presumptions, and lacks independent foundation in either law or the facts.

Finally, it is obvious that the prosecutor's comments did not prejudice the jury against Appellant, forming in their minds fixed bias and hostility which would require a new trial. To the contrary, the jury acquitted Appellant of all charges relating to the first robbery and numerous remaining charges associated with the second robbery. (*See* N.T. Trial, 11/02/15, 12-18). Appellant's second claim does not merit relief.

In his third claim, Appellant asserts that the evidence was insufficient to convict him of intimidation of a witness. (*See* Appellant's Brief, at 31-36). We disagree.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact

finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Franklin*, 69 A.3d 719, 722–23 (Pa. Super. 2013) (one citation omitted).

A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or

thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

　　(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

　　(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S.A. § 4952(a).

Here, under our standard of review, viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth as verdict winner, we have no hesitation in concluding that there was more than ample evidence to support Appellant's conviction of intimidation of a witness.

Preliminarily, we agree with the trial court that Appellant's generic assertion of insufficiency in his Rule 1925(b) statement of errors "as a matter of law" is too vague to enable meaningful review. (**See** Trial Ct. Op., at 8; **see also** Statement of Errors Complained of on Appeal, 7/15/16, at unnumbered page 2) ("[T]he evidence was insufficient as a matter of law to convict on the charge of Intimidation of Witnesses or Victims, 18 Pa.C.S.A. § 4952, as a felony of the first degree.").

> When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

*Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa. Super. 2002) (citations and internal quotation marks omitted).  Accordingly, Appellant's third claim is waived.

Moreover, his argument on appeal would not merit relief.  Appellant argues chiefly that at the time of the September robbery Sheppard "was not a victim or a witness in any criminal matter[.]"  (Appellant's Brief, at 31).  Appellant also argues that even though the evidence presented against him might prove retaliation, it does not prove intimidation.  (*See id.* at 33).  We disagree.

Appellant's gratuitous assumption that Sheppard was neither a victim nor a witness is unsupported, and in fact, belied by the record.  Furthermore, Appellant's somewhat paradoxical claim that because he concedes he could be guilty of retaliation, he is not guilty of intimidation, is without foundation in either controlling authority or the facts.  It overlooks the reality that Appellant could be (and actually was) materially guilty of both crimes, even if the Commonwealth did not choose to charge that way.

Overarching all of these considerations, Appellant disregards our standard of review, which views the evidence, together with all reasonable inferences, in the light most favorable to the Commonwealth as verdict winner.  The jury as factfinder was free to accept evidence that Appellant and his cohorts robbed Sheppard a second time both in retaliation for his

report to the police of the first robbery, **and** to discourage him from further cooperation. Appellant waived his third claim. It would not merit relief.

In Appellant's fourth and final claim, he challenges the weight of the evidence. (*See id.* at 36-42). Appellant asserts that the verdict was "against the interests of justice." (*Id.* at 19). He posits that the inconsistencies in Sheppard's testimony were "glaring and significant." (*Id.* at 41). He postulates that the evidence was "tenuous, vague and uncertain." (*Id.* at 42). He maintains this Court should remand for a new trial. (*See id.*). We disagree.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court.

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is

against the weight of the evidence. **One of the least assailable reasons for granting or denying a new trial** is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations and quotation marks omitted) (first emphasis added in original) (second emphasis added here). "In order for an appellant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003), *appeal denied*, 833 A.2d 143 (Pa. 2003).

Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve. *See Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011), appeal *denied*, 32 A.3d 1275 (Pa. 2011) (citations omitted) ("[T]he [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence."). "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Id.*

Applying this standard of review, we discern no basis on which to disturb the decision of the trial court. The trial court did not palpably abuse its discretion. Weighing the evidence was the province of the jury sitting as fact finder. The jury was free to believe all, part, or note of the evidence.

Its verdict does not shock one's conscience or sense of justice. Appellant's weight claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2017